UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CANDACE HARPER,** | * | |
| Plaintiff | * | Case No.: 09-CV-2254 |
| v. | * | Wexler, J. |
| **GOVERNMENT EMPLOYEES INSURANCE COMPANY** | * | Lindsay, M.J. |
| | * | |
| Defendant | | |

## DEFENDANT'S OPPOSITION
## TO MOTION FOR CONDITIONAL CERTIFICATION

Bruce S. Harrison, Esq. (admitted pro hac vice)
Eric Hemmendinger, Esq. (admitted pro hac vice)
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201
410-752-1040 Telephone
410-752-8861 Facsimile
bsh@shawe.com
eh@shawe.com

Laura M. Lestrade, Esq. (LL3106)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177-1500
(212) 415-9227 Telephone
(212) 953-7201 Facsimile
lestrade.laura@dorsey.com

*Attorneys for Defendant*

## TABLE OF CONTENT

TABLE OF AUTHORITIES .................................................................................................. ii

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................ 2

       A.     Number and location of TCR IIs ..................................................................... 2

       B.     Plaintiff's individualized claim ........................................................................ 2

       C.     Differences between TCR Is and TCR IIs ....................................................... 3

       D.     Differences between TCR IIs in Woodbury and
              TCR IIs elsewhere ........................................................................................... 3

III.   THE LEGAL STANDARD ....................................................................................... 5

       A.     Because discovery has taken place, this case is
              subject to heightened scrutiny .......................................................................... 5

       B.     The critical question is whether the plaintiff's claims
              present common issues of law and fact. ........................................................... 6

IV.    IF SUMMARY JUDGMENT IS DENIED, THIS CASE SHOULD
       PROCEED AS AN INDIVIDUAL ACTION. ........................................................... 8

       A.     The issues are individualized. .......................................................................... 8

       B.     No other employee has joined this case. ........................................................ 10

       C.     GEICO has a strong probability of prevailing on the merits. ........................ 10

V.     IF THE COURT PERMITS A COLLECTIVE ACTION, IT SHOULD BE
       LIMITED TO TCR IIS IN WOODBURY. .............................................................. 11

       A.     The TCR I job is different from the TCR II job. ........................................... 11

       B.     The duties of TCR IIs in Woodbury are different from the
              duties of TCR IIs elsewhere. .......................................................................... 12

VI.    CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                                               **PAGES**

*Amendola v. Bristol-Myers Squibb Co.*
558 F. Supp.2d 459 (S.D.N.Y. 2008) .................................................................. 5, 6, 8, 11

*Burch v. Qwest Communications International,*
677 F. Supp. 2d 1101 (D. Minn. 2009) ............................................................................ 9

*Darboe v. Goodwill Industries*
485 F. Supp. 2d 221 (E.D.N.Y. 2007)(Wexler, J.) ......................................................... 1

*Diaz v. Electronics Boutique of America*
2005 WL 2654270 (W.D.N.Y. 2005) ............................................................................... 9

*Dybach v. Florida Dep't. of Corr.*
942 F.2d 1562 (11th Cir. 1991) ...................................................................................... 10

*Gortat v. Capala Bros.*
2010 WL 1423018 (E.D.N.Y. 2010) ........................................................................... 6, 10

*Hoffmann-La Roche v. Sperling*
493 U.S. 165 (1989) .............................................................................................. 6, 10, 14

*In re Initial Pub. Offering Sec. Litig.*
471 F.3d 24 (2d Cir. 2006)(Rule 23 case) ....................................................................... 8

*Jonites v. Exelon Corp.*
552 F.3d 721 (7th Cir. 2008) ............................................................................................ 9

*Mike v. Safeco Ins. Co. of America*
274 F. Supp.2d 216 (D. Conn. 2003) ............................................................................... 7

*Realite v. Ark Restaurants Corp.*
7 F. Supp. 303 (S.D.N.Y. 1998) ...................................................................................... 7

*Sexton v. Franklin First Financial*
2009 WL 1706535 (E.D.N.Y. 2009) .............................................................................. 11

*Torres v. Gristede's Operating Corp.*
2006 WL 2819730 (S.D.N.Y. 2006) ............................................................................ 5, 6

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*
571 F.3d 953 (9th Cir. 2009)(Rule 23 case) ................................................................... 7

Regulations

29 C.F.R. § 541.200(a)(3)..................................................................................................8

29 C.F.R. § 541.203(a) .....................................................................................................8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CANDACE HARPER, | * | |
| Plaintiff | * | Case No.: 09-CV-2254 |
| v. | * | Wexler, J. |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY | * | Lindsay, M.J. |
| | * | |
| Defendant | | |

**DEFENDANT'S OPPOSITION TO MOTION
FOR CONDITIONAL CERTIFICATION**

**I.   INTRODUCTION**

If the Court grants GEICO's pending motion for summary judgment, Plaintiff's motion for collective action notice will be moot. *Darboe v. Goodwill Industries*, 485 F. Supp. 2d 221 (E.D.N.Y. 2007)(Wexler, J.)(When plaintiff ceased to have a stake in the case, the court ceased to have jurisdiction). Even if the Court denies the motion for summary judgment, Plaintiff's motion for collective action notice should be denied because the facts concerning Plaintiff's claims are individualized (probably focusing on how she was treated by her immediate supervisor), no other employee has filed a similar claim and Plaintiff has a low chance of ultimately prevailing. At most, if the Court concludes that collective action notice is appropriate, it should be limited in scope to TCR IIs employed in the Woodbury, New York regional office. It should not include TCR IIs elsewhere or TCR Is in any location.[1] Although GEICO submits that both jobs

---

[1] It is undisputed that Telephone Claims Representative II, TCR II, Telephone Adjuster II, and TA II are different names for the same job.

are properly classified as exempt, they have different duties. TCR IIs handle claims for pain and suffering resulting from bodily injuries, while TCR Is handle property damage and first call settlements. TCR IIs in the Woodbury office perform significantly different tasks than TCR IIs elsewhere, the main difference being that TCR II's in Woodbury adjust claims under New York's no-fault insurance law. As a result, much of the evidence concerning the duties of TCR IIs in Woodbury would not apply to TCR IIs elsewhere or TCR Is anywhere.

## II.  STATEMENT OF FACTS

### A.  Number and location of TCR IIs

GEICO currently employs a total of approximately exempt 620 TCR IIs. They are located in Woodbury and Buffalo, New York; Marlton, New Jersey; Dallas and Houston, Texas; Virginia Beach and Fredericksburg, Virginia; Renton, Washington; Tucson, Arizona; Macon, Georgia; Lakeland, Florida; and Honolulu, Hawaii. Each office handles claims from different sets of states. Woodbury handles mainly New York claims, while Buffalo handles mainly New England claims. There are approximately 99 TCR IIs in Woodbury. Pham Dec. § 6.

### B.  Plaintiff's individualized claim

The Plaintiff was employed as a TCR II in GEICO's Woodbury, New York, regional office. She is the only TCR I or II who has sued GEICO claiming that she was misclassified as exempt from overtime. Pham Dec. § 2. She did not work in the TCR I classification after September 7, 2002. Pham Dec. § 3.

In her deposition, Plaintiff's counsel led Plaintiff to testify that her supervisor was a "micro-manager." Exh. 1 to Pham Dec./Harper Dep. 215. Plaintiff's supervisor

2

testified that other supervisors have different practices with respect to overseeing settlements. Exh. 2. to Pham Dec./Harris-Grant Dep. 199-200. She also testified that she treats employees in her unit differently based on their strengths. *Id.* 217.

### C.    Differences between TCR Is and TCR IIs

There are significant differences between the tasks performed by TCR Is and TCR IIs. TCR IIs handle claims for pain and suffering arising from bodily injury claims. TCR Is handle property damage claims and first call settlements.[2] Thus, TCR IIs exercise discretion and independent judgment in a number of tasks that are not included in the TCR I job, including assessing the value of a bodily injury claim and negotiating settlements of pain and suffering claims with claimants' lawyers. In Woodbury, they also recommend whether the claim pierces the no-fault threshold. Pham Dec. § 4.

GEICO has one Claims Manual for all claims employees, but it is not a set of instructions. It is a reference guide to general principles of automobile insurance claims. TCR Is and TCR IIs receive basic training in their respective jobs using materials prepared by the Home Office training department, however, the training for the TCR II job covers different topics than the training for TCR I. While TCR Is and TCR IIs both use the Claims IQ program, TCR IIs use modules for assessment of personal injury claims that TCR Is do not use. Pham Dec. § 5.

### D.    Differences between TCR IIs in Woodbury and TCR IIs elsewhere

There are also significant differences between the tasks performed by TCR IIs in Woodbury and those performed by TCR II's elsewhere.

---

[2] First call settlements are settlements reached by TCR Is in their first contact with the claimant. They do not involve negotiations with claimant's counsel and typically do not exceed $1,000.

3

In Woodbury, first-party (GEICO insureds) medical bills are handled by the Personal Injury Protection (PIP) unit. Third-party claimants' medical bills are handled by their own no fault carrier. The TCR II handles the third-party claim for pain and suffering. This requires that the TCR II make a threshold determination. Pham Dec. § 7.

In most other states, there is no, or limited, personal injury protection or medical payment coverage, and GEICO does not have a PIP unit. If there is a third-party claim, the entire file is transferred to a TCR II, who handles the first-party (GEICO's insured) and third-party claimant's medical bills. When the claimant has completed treatment, the TCR II negotiates an overall settlement that includes the third-party claimant's medical bills as well as damages for pain and suffering. In settling the third-party claim, the TCR II would consider whether the bills include treatment for unrelated injuries, whether the fees for treatment are usual and customary, and whether there has been excessive treatment. A TCR II elsewhere may order an independent medical examination of a first-party or send the file to a medical expert for review. That would not happen in Woodbury. Pham Dec. § 8.

These differences can be briefly summarized[3] as follows:

| TCR IIs elsewhere | TCR IIs in Woodbury |
|---|---|
| Adjust first-party (GEICO insured) medical payment and PIP claims on files with third-party claims. | Do not adjust first-party (GEICO insured) medical payment or PIP claims. That work is handled by the PIP unit. |
| Consider dollar amounts of third-party medical bills submitted and may review or adjust for medical necessity or amount. | Do not consider, review or adjust dollar amounts of third-party medical bills. That work is handled by the third-party's carrier. |
| In most states, do not make threshold determinations. | Make threshold determinations |

---

[3] This chart is a broad generalization because the duties of TCR IIs elsewhere are not uniform from location to location. Pham Dec. §10.

4

Pham Dec. § 9.

In addition, claims in New York are governed by pure comparative negligence. TCR II's in Woodbury must determine fault on a scale ranging from 0 to 100 percent. In most other locations, claims are governed by contributory negligence or modified comparative negligence. Pham Dec. § 11.

### III. THE LEGAL STANDARD

#### A. Because discovery has taken place, this case is subject to heightened scrutiny.

The "lenient" first stage standard cited by Plaintiff applies only before discovery. "Post-discovery, as is the case with the instant motion, the Court applies heightened scrutiny to this inquiry as compared to pre-discovery." *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 (S.D.N.Y. 2006) at *9; *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp.2d 459 (S.D.N.Y. 2008).

Full discovery on the merits of a collective action enormously increases the burden on the parties, especially the defendant, and possibly the court, to the extent there are discovery disputes.[4] To moderate the cost of discovery, the parties in this case agreed, in the Joint Rule 26(f) Report, to take it in progressive stages. D.I. 14. Stage one included discovery on the collective action issues and individual claim. In accordance with the parties' agreement, Plaintiff has taken the deposition of her former supervisor and GEICO's corporate designee, the Assistant Vice President of Claims for Region II. GEICO has produced documents concerning its claims jobs and answered interrogatories

---

[4] "Requiring the scope of notice to be dictated by the formation in a complaint may lead to excessive litigation costs that grossly outweigh the benefits that can be justly achieved through the litigation." *Amendola*, 558 F. Supp. 2d at 480.

5

concerning them. Under these circumstances, it is both possible and desirable to apply heightened scrutiny to Plaintiff's motion. *Torres, supra*; *Amendola, supra*.[5]

### B. The critical question is whether the plaintiff's claims present common issues of law and fact.

In approving the collective action notice procedure for use in appropriate cases, the Supreme Court stated that "The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).[6] Thus, at all stages of the putative collective action, the critical consideration is whether the claims presented by the named plaintiff raise issues of law and fact common to other employees.

When a case goes to trial, whether there are common issues of fact boils down to whether the evidence offered in connection with the named plaintiff's claim would also permit resolution of other employees' claims. When the same evidence applies, it may be efficient to aggregate the claims. For example, if the evidence shows that an employer pays employees less than $455 per week, that evidence allows the conclusion that all the affected employees are nonexempt from overtime. On the other hand, if the trial requires

---

[5] In *Gortat v. Capala Bros.*, 2010 WL 1423018 (E.D.N.Y. 2010), the Court adopted Magistrate Judge's recommended ruling that the heightened standard applies only after discovery *and* notice of right to opt-in. GEICO respectfully submits that the *Gortat* approach would not be the most efficient approach to this case. If the evidence at this stage permits the conclusion that other employees are not sufficiently similar then there is no point in inviting them to opt-in. When it approved the notice procedure, the Supreme Court praised the "wisdom and necessity for early judicial intervention in the management of litigation." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

[6] *Hoffmann-La Roche* was an age discrimination case. The Age Discrimination in Employment Act borrowed its enforcement procedure from the FLSA.

6

a detailed examination of each employee's duties, evidence concerning one employee will not necessarily dispose of any other employee's claims.

The argument that "there is nothing unfair about litigating a single corporate decision in a single collective action" (Plfs. Brief at 13) misses the point. The procedure in a jury trial is not a mirror image of a corporate personnel decision. *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 959 (9th Cir. 2009)(Rule 23 case)("the blanket exemption policy does nothing to facilitate common proof on the otherwise individualized issues."). A company may decide that an occupation generally has sufficient discretion and independent judgment to qualify for the administrative exemption from overtime. That does not mean that if a case goes to trial, the parties are limited to offering only generic evidence, such as job descriptions and manuals. Indeed, job descriptions and manuals are considered secondary evidence of an employee's duties. *Mike v. Safeco Ins. Co. of America*, 274 F. Supp.2d 216, 220 (D. Conn. 2003). The primary focus is on what the employee actually does on a day to day basis. *Id.* "Determining whether an employee is exempt is extremely individual and fact intensive." *Id.* The evidence typically consists of testimony from the employee, the employee's supervisor and co-workers and documents exemplifying the employee's work product.

Another critical aspect of judicial efficiency is whether there is reasonable cause to believe that plaintiff and other employees were "victims of a common policy or plan *that violated the law.*" *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 303, 306 (S.D.N.Y. 1998). Courts in the Southern and Eastern Districts of New York see many cases involving relatively obvious FLSA violations and the question whether there is reason to believe the common policy actually violated the law often receives little attention. It is,

7

however, a proper consideration. *Amendola*, 558 F. Supp.2d at 466 ("Where a defendant employer shows either that the potential recipients of notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone the issue pending further discovery and motion practice."). It would be wasteful to turn this individual case into a multi-plaintiff case, if it appears that the allegations have little chance of ultimately prevailing. The Court can consider issues that overlap with the merits in deciding whether a case should proceed as a collective or class action. *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006)(Rule 23 case).

## IV. IF SUMMARY JUDGMENT IS DENIED, THIS CASE SHOULD PROCEED AS AN INDIVIDUAL ACTION.

### A. The issues are individualized.

As of this writing, GEICO does not know how Plaintiff will respond to its motion for summary judgment or how the Court will rule.[7] In cases involving insurance adjusters, there is normally no debate about the type of work involved, because Department of Labor regulations specifically state that adjusting insurance claims is administrative in nature. 29 C.F.R. § 541.203(a). Thus, there is only one issue which is potentially subject to dispute—whether the employee exercised discretion and independent judgment. If it turns out that there is a genuine issue of material fact

---

[7] GEICO served on Plaintiff an interrogatory asking, "If you deny that as a TCR II, your primary duty included the exercise of discretion and independent judgment with respect to matters of significance, state the factual basis for your claim." Plaintiff failed to respond on the grounds that "the term 'matters of significance' is vague in the context of this Interrogatory." Exh. 3 to Pham Dec./Answer 4. Plaintiff did not supplement her response, even after it should have been apparent that the interrogatory repeats verbatim the wording of the regulation defining the administrative exemption. 29 C.F.R. § 541.200(a)(3).

8

concerning that issue in this case, it might concern the degree of independence Plaintiff was accorded by her supervisor. For example, in her deposition, Plaintiff's counsel led Plaintiff to testify that her supervisor was a "micro-manager." Exh. 1 to Pham Dec./Harper Dep. 215. That issue is individualized, or at most limited to the supervisory unit. Plaintiff's supervisor testified that other supervisors have different practices with respect to overseeing settlements. Exh. 2. to Pham Dec./Harris-Grant Dep. 199-200. She also testified that she treats employees in her unit differently based on their strengths. *Id.* 217.

Further complications would come into play at the remedy phase. Plaintiff worked a self-determined, idiosyncratic schedule, which was permitted because she was salaried exempt. Although the basic work week is Monday through Friday, she claims that she often worked on Saturday and Sunday. Plfs. Brief at 5. If this case reaches the remedy phase as a collective action, the Court may have to determine the hours worked by each of the plaintiffs. That would require testimony from each of them, because GEICO did not record the hours of salaried exempt employees. *Jonites v. Exelon Corp.*, 552 F.3d 721, 725 (7th Cir. 2008)(claims that employee worked during meal breaks were "hopelessly heterogeneous"); *Burch v. Qwest Communications International*, 677 F. Supp. 2d 1101 (D. Minn. 2009)("However, the Court's analysis has demonstrated that Plaintiffs who allege FLSA violations based on the hodgepodge of other uncompensated activities are not a cohesive group of Plaintiffs with a common set of claims that would be conducive to a collective action."); *Diaz v. Electronics Boutique of America*, 2005 WL 2654270 (W.D.N.Y. 2005)(off the clock claims required individual inquiries).

9

### B. No other employee has joined this case.

The Supreme Court held that, "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut-off dates to expedite disposition of the action." *Hoffmann-La Roche*, 493 U.S. 172. With this in mind, the Eleventh Circuit held that before granting notice, a district court should satisfy itself that there are other employees who desire to opt-in. *Dybach v. Florida Dep't. of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991). District courts in the Second Circuit disagree. *See Gortat v. Capala Bros, supra* at * 10 (collecting authorities). GEICO submits that even if the lack of other claimants is not controlling, it is at least relevant. The lack of other existing claimants undermines the idea that a collective action is necessary to avoid duplicative lawsuits. In this instance, Plaintiff is the only TCR I or II who has sued GEICO claiming that she was misclassified as exempt from overtime. Pham. Dec. § 2. There is no reason to believe that a collective action is necessary to manage the Court's docket of similar claims.

### C. GEICO has a strong probability of prevailing on the merits.

Presumably, Plaintiff's motion for collective action notice will not be considered unless the Court denies the summary judgment motion. That does not mean that the Plaintiff is likely to prevail at trial. Plaintiff's own claim files provide abundant and persuasive evidence that she met the test for the administrative exemption. The federal appellate courts have consistently found adjusters, including adjusters with less responsibility than Plaintiff, exempt from overtime. Plaintiff evidently seeks to buck that trend. However, the possibility that she can create a dispute of fact requiring trial does

not mean that the Court should facilitate her efforts to solicit more plaintiffs. *Amendola*, 558 F. Supp.2d at 466.

## V. IF THE COURT PERMITS A COLLECTIVE ACTION, IT SHOULD BE LIMITED TO TCR IIS IN WOODBURY.

### A. The TCR I job is different from the TCR II job.

Plaintiff did not work in the TCR I classification during the limitations period and lacks standing to bring any claim concerning it. Pham Dec. § 3. While GEICO submits that both jobs were properly classified as exempt, the TCR I job is not sufficiently similar to the TCR II job to be included in this action. *Sexton v. Franklin First Financial*, 2009 WL 1706535 (E.D.N.Y. 2009)(authorizing notice to inside loan officers but not outside loan officers).

There is an important difference between the TCR I and the TCR II positions. TCR IIs handle claims for pain and suffering arising from bodily injury claims. TCR Is handle property damage claims and first call settlements. Thus, TCR IIs exercise discretion and independent judgment in a number of tasks that are not included in the TCR I job, including assessing the value of a bodily injury claim and negotiating settlements of pain and suffering claims with claimants' lawyers. In Woodbury, they also recommend whether the claim pierces the no-fault threshold. Pham Dec. § 4. Because of this significant difference in their duties, the classification as exempt of the TCR I and TCR II jobs does not present a common question of fact. Much of the evidence that would be presented concerning the exercise of discretion and independent judgment by TCR IIs would not apply to the TCR Is.

In support of her argument that the jobs are similar, Plaintiff contends that TCR Is and TCR IIs both use the same Claims Manual, receive training material from the Home

11

Office and use the same software. Plfs. Brief at 4. That is only partially correct. GEICO has one Claims Manual, but it is not a set of instructions. It is a reference guide to general principles of automobile insurance claims. TCR Is and TCR IIs receive basic training in their respective jobs using materials prepared by the Home Office training department, however, the training for the TCR II job covers different topics than the training for TCR I. While TCR Is and TCR IIs both use the Claims IQ program, TCR IIs use modules for assessment of personal injury claims that TCR Is do not use. Pham Dec. § 5.

### B. The duties of TCR IIs in Woodbury are different from the duties of TCR IIs elsewhere.

There are considerable differences between the way claims arising in New York State are processed in Woodbury and the way claims arising in other states are handled in other offices. They are summarized in this chart, which also appears in the Statement of Facts (above).

| TCR IIs elsewhere | TCR IIs in Woodbury |
|---|---|
| Adjust first-party (GEICO insured) medical payment and PIP claims on files with third-party claims. | Do not adjust first-party (GEICO insured) medical payment or PIP claims. That work is handled by the PIP unit. |
| Consider dollar amounts of third-party medical bills submitted and may review or adjust for medical necessity or amount. | Do not consider, review or adjust dollar amounts of third-party medical bills. That work is handled by the third-party's carrier. |
| In most states, do not make threshold determinations. | Make threshold determinations. |

Pham Dec. § 9. This chart is a simplification, because the duties of TCR II's elsewhere are not uniform, but differ from place to place. Pham Dec. § 10.

Another important difference between TCR IIs in Woodbury and TCR II's elsewhere is that claims in New York are governed by pure comparative negligence.

12

Accordingly, TCR IIs in Woodbury must determine fault on a scale ranging from 0 to 100 percent. In most other locations, claims are governed by contributory negligence or modified comparative negligence. Pham Dec. § 11.

Plaintiff's argument that these differences are mere "nuances" is based on selective quotation from deposition testimony. Plfs. Brief at 3. Thus, asked whether the training is the same from state to state, GEICO's corporate designee testified, "the nuances of claim handling vary so greatly state to state and jurisdiction that I think it is impossible to say it would be the same." Exh. 4 to Pham Dec./Pham Dep. at 43. He also testified, "Each state has different laws regarding negligence and different regulations which we have to comply with. We are regulated on a state to state basis. The training will differ based on the regulations of that state and may also differ with respect to different procedures that each region would put into place." Exh.4 to Pham Dec./Pham Dep. at 42.

The significance of these differences is not that TCR IIs in Woodbury are any more or less qualified for the administrative exemption than TCR IIs elsewhere. Rather, the significance of the differences is that the evidence offered at trial concerning the duties of TCR IIs in Woodbury would be significantly different from the evidence concerning TCR IIs elsewhere. TCR IIs in Woodbury perform important tasks that TCR IIs elsewhere do not perform, and vice versa. Moreover, the tasks of TCR IIs elsewhere are not uniform, but differ based on state law and management preferences.

Plaintiff may respond to these differences by arguing that they can be managed by dividing the collective action into subclasses. That might be useful during discovery and motions, although it would considerably compound the cost. In a jury trial, however, the

13

use of subclasses would be cumbersome and time-consuming at best and completely unmanageable at worst. If this case is tried before a jury involving claims by TCR IIs in different locations, the potential for an inconvenient, lengthy and confusing trial is manifest. This is not a case in which there are already named plaintiffs from multiple locations, leaving the Court no choice except to manage the differences. This is thus far a single plaintiff case. If the Court chooses to make this a multi-plaintiff case, it is not necessary to choose the largest possible scope. It makes more sense, GEICO submits, to choose a scope that can be efficiently managed.

## VI. CONCLUSION

If the Court decides to allow a collective action, it should be limited in scope to TCR IIs in the Woodbury, New York regional office. However, the better choice, GEICO submits, is to treat this as an individual case. In *Hoffmann-La Roche*, the Supreme Court did not hold that notice should be granted in every case, it held that such notice could be granted "in appropriate cases." 493 U.S. at 169. This case has none of the earmarks of an appropriate case. GEICO's decision to classify the job as exempt is solidly supported by the law, the Plaintiff is the only person ever to file suit concerning it, and the evidence Plaintiff is likely to offer focuses on her relationship with her immediate supervisor. For these reasons, the motion for collective action notice should be denied.

Respectfully submitted,

/s/_____
Bruce S. Harrison, Esq. (admitted pro hac vice)
Eric Hemmendinger, Esq. (admitted pro hac vice)
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201

14

Case 2:09-cv-02254-LDW-ARL   Document 36-9   Filed 09/17/10   Page 19 of 20

410-752-1040 Telephone
410-752-8861 Facsimile
bsh@shawe.com
eh@shawe.com


/s/
Laura M. Lestrade, Esquire (LL3106)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177-1500
(212) 415-9227 Telephone
(212) 953-7201 Facsimile
lestrade.laura@dorsey.com

*Attorneys for Defendant*

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CANDACE HARPER, | * | |
| Plaintiff | * | Case No.: 09-CV-2254 |
| v. | * | Wexler, J. |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY | * | Lindsay, M.J. |
| | * | |
| Defendant | | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 20th day of August, 2010, a copy of Defendant's Opposition to Motion for Conditional Certification was electronically mailed to:

> Jeffrey A. Klafter
> Seth R. Lesser
> Fran L. Rudich
> KLAFTER, OLSEN & LESSER LLP
> Two International Drive, Suite 350
> Rye Brook, NY 10573
>
> Bradley I. Berger
> BERGER & ASSOCIATES
> 321 Broadway
> New York, NY 10007
>
> Joseph R. Donohue
> Edwin L. Wallace
> Marilyn T. Goldrick
> THORNTON & NAUMES, LLP
> 100 Summer Street, 30th Floor
> Boston, MA 02110
>
> *Attorneys for Plaintiffs*
>
> /s/
> _____
> Eric Hemmendinger