UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CANDACE HARPER,

                                   Plaintiff,

           -against-

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

                                 Defendant.

----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 09-2254

(Wexler, J.)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   NOV 0 4 2013   ★

**LONG ISLAND OFFICE**

APPEARANCES:

    KLAFTER OLSEN &LESSER LLP
    BY: SETH R. LESSER, ESQ.
        FRAN L. RUDICH, ESQ.
        JEFFREY A. KLAFTER, ESQ.
    Attorneys for Plaintiff
    2 International Drive, Suite 350
    Rye Brook, New York 10573

    THORNTON & NAUMES, LLP
    BY: ROBERT M. BYRNE, ESQ.
        MARILYN McGOLDRICK, ESQ.
        JOSEPH R. DONOHUE, ESQ.
    Attorneys for Plaintiff
    100 Summer Drive, 30th Floor
    Boston, Massachusetts, 02110

    BERGER ATTORNEY, P.C.
    BY: BRADLEY I. BERGER, ESQ.
    Attorneys for Plaintiff
    321 Broadway
    New York, New York 10007

1

SHAWE & ROSENTHAL, LLP
BY: ERIC HEMMINDINGER, ESQ., TERESA D. TEARE, ESQ.
Attorneys for Defendant
20 S. Charles Street, 11th Floor
Baltimore, Maryland 21201

RIVKIN RADLER
BY: BARRY I. LEVY, ESQ., KENNETH A. NOVIKOFF, ESQ.
Attorneys for Defendant
RXR Plaza
Uniondale, New York 11556

DORSEY & WHITNEY LLP
BY: LAURA M. LESTRADE, ESQ.
Attorneys for Defendant
250 Park Avenue
New York, New York 10177-1500

WEXLER, District Judge

This is a conditionally certified collective action in which Plaintiff Candace Harper

("Plaintiff" or "Harper") seeks overtime compensation for herself and others similarly situated

pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207 (the "FLSA"), and a parallel provision

of New York State law. Defendant is Harper's former employer, Government Employees

Insurance Company ("Defendant" or "GEICO").

Discovery is closed and the case is trial-ready. Presently before the court are: (1)

GEICO's motion to decertify the collective action; (2) Plaintiff's motion for partial summary

judgment as to a single element of a FLSA exemption claimed by GEICO, and (3) GEICO's

opposition to Plaintiff's motion, as well as its own motion for summary judgment as to all

elements of the claimed FLSA exemption. For the reasons that follow, Plaintiff's motion for

partial summary judgment is denied and GEICO's motion for summary judgment is granted. The

court therefore does not reach the merits of the motion to de-certify the collective class.

BACKGROUND

I.    Prior Proceedings

Plaintiff was employed as a Telephone Claims Representative ("TCR") for GEICO. She seeks overtime compensation allegedly earned prior to her departure from the company in 2009. GEICO has maintained, throughout this litigation, that Plaintiff and those similarly situated are exempt from FLSA's overtime compensation provision. Specifically, GEICO relies on the FLSA overtime exemption of "administrative" employees.  See 29 U.S.C. 213(a)(1) (exempting "any employee employed in a bona fide executive, administrative, or professional capacity"). Additionally, GEICO has maintained that the group that Plaintiff represents is not an appropriate group for FLSA collective action treatment.

In a Memorandum and Order dated November 16, 2010, this court held that questions of fact required denial of GEICO's motion for summary judgment as to the claimed exemption. Harper v. Government Employees Ins. Co., 754 F. Supp.2d 461 (E.D.N.Y. 2010). In particular, this court noted the parties' "sharp disagreement" concerning the scope of Plaintiff's duties, and whether she exercised the discretion and judgment required to characterize her position as within the scope of the FLSA exemption for administrative employees. Harper, 754 F. Supp2d. at 465-66.

After the denial of summary judgment, Plaintiff moved to conditionally certify a nation-wide class proposed to include GEICO employees holding the titles Telephone Claims Representative I ("TCR I") and Telephone Claims Representative II ("TCR II"). This court referred Plaintiff's motion for conditional certification to the assigned Magistrate Judge. On June 14, 2011, that court recommended that this matter be conditionally certified as a collective

3

action, and that notice be sent to potential members ("opt-ins") of the class. GEICO appealed the recommendation to this court, and on October 18, 2011, this court overruled GEICO's objections, affirming the recommendation of the Magistrate Judge. Class notice was thereafter sent to all potential opt-in Plaintiffs and discovery proceeded. More than 300 individuals have opted in to this matter, discovery is closed, and a trial date of January 27, 2014 has been set.

II.   <u>Facts Revealed Through Discovery</u>

Since this court's denial of GEICO's motion for summary judgment and its conditional certification of the class, the parties have engaged in extensive discovery. Depositions have been taken of Plaintiff Harper as well as several opt-in members of the collective action, and documents have been produced. Depositions, documents and the parties' statements pursuant to Local Rule 56.1 are before the court. Discussed below are facts that are clear, materially undisputed, and properly considered in the context of this motion.

A.   <u>GEICO's Business</u>

First, it is clear that GEICO is in the business of selling insurance. For reasons that become clear in the legal discussion below, Plaintiff seeks to characterize GEICO as a company that is engaged not only in the business of selling insurance, but also in the business of handling claims. Obviously, as a seller of insurance, GEICO is responsible for making proper payment on claims made under the policies it sells. While GEICO could presumably contract the handling of claims to an outside company that might be engaged in such a business, GEICO chooses to handle claims in-house. This does not make the company engaged in the claims adjustment business. The handling of claims is simply one of the operations conducted by GEICO as a part of servicing its insurance business. Indeed, GEICO's income as a business is derived, not from

4

paying out on claims, but on selling policies of insurance. No profit is made from the former activity. For these reasons, the court finds, as a matter of law, that GEICO is engaged in the business of selling insurance policies. The court turns now to discuss what discovery has revealed about the duties of the employees at issue, i.e., those holding the titles TCR I and TCR II.

      B.    Duties of TCR's

Individuals employed under the TCR title are telephone claims representatives. TCR I's are GEICO employees who adjust property damage claims arising from coverage or liability issues, and first party medical claims. TCR II's perform the same functions as TCR I's, but also adjust claims involving bodily injury. The value of claims that any particular TCR can settle varies. Plaintiff Harper, for example, had the authority to settle claims of up to $10,000 per person, and $12,500 per claim. Opt in Plaintiff Carr had settlement authority of up to $5,000 per person and $7,500 per claim. Certain other plaintiffs had lower ranges of settlement authority. A TCR's range of authority could increase with experience and/or a promotion. With the exception of the bodily injury settlement authority, the general duties and working conditions of TCR I's and TCR II's are the same, and discussed below.

Individuals hired as TCR's begin their employment by undergoing a twelve week training period. During that time, TCR's learn how to handle claims presented to them over the telephone by GEICO's policy holders. TCR's are provided with manuals and policies explaining GEICO's procedures as to the proper handling of claims. During an orientation period that typically lasts six months, TCR's handle claims along with a supervisor. Once their training and orientation periods are complete, TCR's assume their usual duties.

The physical space in which TCR's work has been described, and in all material respects, is agreed upon by the parties. Generally, TCR's work in units of five to eight, reporting to one supervisor. TCR's sit in cubicles that are arranged to be physically close to their supervisor, who is immediately on hand to answer any questions that may arise. Supervisors have the ability to listen in on TCR conversations if necessary. Supervisor time is not dedicated completely to listening in on TCR conversations. Instead, supervisors are available to TCR's, while also being engaged in other duties. TCR's can and do act independently until a supervisor is called upon. If necessary, TCR's can confer with supervisors at the outset of the claims procedure. They are not, however, required to involve a supervisor in each and every decision made. While Plaintiffs would have the court find that supervisors direct each and every move of the TCR's, the court finds that the testimony of members of the collective class indicates otherwise. Instead, the evidence is clear that TCR supervisors do just what their titles suggests – they supervise a group of TCR's, as necessary. They do not direct the TCR's every move, but they do provide advice and assistance. Supervisors can monitor TCR activities, including, if necessary, on a real time basis.

There are different phases of TCR procedures and job responsibilities. First, upon initiation of a telephone call regarding coverage, the TCR makes an initial determination as to whether there is coverage under a GEICO policy. This coverage decision can be reached independently, without supervisor involvement. If there is coverage, the TCR can move on to investigate the claim without supervisor approval. If, on the other hand, the TCR believes that a claim is not covered, the denial of coverage decision moves to the supervisor level. After a positive coverage determination is made, the adjustment procedure moves on. The TCR can

6

make, or recommend a liability determination and the final adjustment of the claim. A TCR II has the additional responsibility of handling a claim that, within limits, involves bodily injury.

GEICO provides guidance to TCR's as to coverage, investigation and liability issues. Thus, throughout the claims adjustment procedure, TCR's are guided by GEICO manuals, supervisor input and the use of GEICO's proprietary "predictive" claims handling software, known as "Claim IQ." GEICO manuals identify coverage issues to explore with the insureds. TCR's are alerted to issues that may arise, including whether or not a vehicle is on a policy, whether the driver is covered or authorized to drive the insured vehicle, whether a loss is properly excluded, and whether there has been compliance with policy terms. These issues are raised in the TCR's manual and help to guide the TCR's interview of the insured.

It is the availability and importance of GEICO's Claim IQ software that is at the heart of the claims here. Plaintiff has always taken the position that Claim IQ dictates the outcome of all claims handling, and that members of this collective action are responsible only for the gathering and entry of facts that generate a binding coverage decision. Plaintiff argues that the use of the Claim IQ software takes all matters of discretion out of the hands of the TCR's. They characterize Claim IQ as an automated system that renders TCR's little more than assembly line fact gatherers. GEICO, on the other hand characterizes the Claim IQ software as a guide to making coverage decisions. While Claim IQ will generate a coverage decision, GEICO maintains that the decision is not binding on the TCR.

The court holds that the evidence properly before the court shows that Claim IQ generates coverage and adjustment recommendations. Those recommendations are based upon the information gathered, and entered in the system by the TCR's. Those facts are generated as a

7

result of the TCR's investigation of the particular claim presented.  During that investigation TCR's are authorized to call the insured, as well as other claimants and witnesses. As part of that process TCR's conduct interviews and engage in questioning. TCR's are guided in their questioning by GEICO procedures. They must, however, tailor their questions to the facts of a particular case, and their impressions regarding witness credibility.  While they do not visit accident scenes, TCR's conduct investigations that include the review of police reports and photos of auto damage. They also consult online resources such as news sites and street views of the accident. TCR's  may also speak with other involved carriers. TCR's can make decisions, or at least recommendations, as to comparative negligence and apportionment of liability. Apportionment of liability determinations can be made, within the TCR's range of authority, without supervisor involvement.

The evidence shows that TCR's and Claims IQ can reach different conclusions as to the final adjustment of a claim. Where a TCR's determination differs from that reached by Claim IQ, the Claim IQ decision does not necessarily prevail.  Instead, the claims issue will go to the next level of supervision. A supervisor will discuss the coverage decision with the TCR and together, a decision will be reached. That decision may or may not be in line with the initial recommendation of the TCR. To be clear, the court finds no evidence to rationally support the position that the determination of Claim IQ is always the "final word" as to coverage.  Nor can the court conclude that TCR's are nothing more than automatons who input answers to a scripted set of questions.  Instead, as noted, the information entered into the Claim IQ software reflects information gathered by the TCR according to his or her own investigation. That factual investigation is necessarily driven by the TCR's determinations as to credibility, and

8

consideration of factors that go beyond responses to scripted questions. Claim IQ is just one –
important but not necessarily determinative – tool used as part of the claims adjustment
procedure.

In addition to the facts discussed above regarding the duties of TCR's in the adjustment
procedure, and the roles played by GEICO manuals, supervisors and Claim IQ, discovery reveals
certain other facts about TCR's, which are not in dispute. The parties agree that TCR's are not
involved in planning GEICO's overall corporate business strategy.  Nor are these employees
involved in planning GEICO's direction, or in setting management policies.

II.      The Present Motions

The parties cross-move for summary judgment. Plaintiff's motion seeks partial summary
judgment, arguing that GEICO cannot, as a matter of law, prove the second prong of the FLSA
administrative employee exemption. GEICO opposes Plaintiff's partial summary judgment
motion and seeks complete summary judgment as to all elements of the claimed FLSA
exemption. Additionally, GEICO moves to de-certify the collective action, arguing that discovery
has revealed important differences among class members, making collective action treatment of
this matter inappropriate. In response, Plaintiff argues that minor differences in duties as revealed
in deposition testimony do not require a holding that members of this collective action are not
"similarly situated." After setting forth relevant legal principles the court will turn to the merits
of the motions.

DISCUSSION

I.       General Principles: Summary Judgment

The general principles regarding summary judgment are familiar. Such motion will be

granted only where there is "no genuine issue as to any material fact" and the undisputed facts

warrant judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247–48 (1986). When considering motions for summary judgment, the court views the

record in the light most favorable to the nonmoving party and draws all reasonable inferences in

favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587,

(1986). "Summary judgment is designed to flush out those cases that are predestined to result in

directed verdict." Pippins v. KPMG LLP, 921 F. Supp.2d 26, 15 (S.D.N.Y. 2012), quoting,

Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir.1997).

II.     FLSA Exemptions

    As noted in in this court's prior opinion, the FLSA overtime provision requires that those

who work more than forty hours per week be compensated at the rate of one and one-half times

the minimum wage. 29 U.S.C. § 207(a)(1); Howard v. Port Authority of New York, New Jersey,

684 F. Supp.2d 409, 412 (S.D.N.Y. 2010).  The FLSA statutory exemptions from the overtime

payment requirement are incorporated into New York State's parallel overtime provision. See 12

N.Y.C.R.R. § 142-3.2. GEICO bears the burden of proving that an exemption applies, and in

view of the fact that the FLSA is remedial in nature, its statutory exemptions are to be narrowly

construed. Reiseck v. Universal Communications of Miami, Inc., 591 F.3d 101, 104 (2d Cir.

2010); Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 222 (2d Cir. 2002); Carhuapoma

v. New York-Presbyterian Healthcare System, Inc., 2013 WL 1285295 *7 (S.D.N.Y. 2013); see

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) (employers seeking to assert exemption

must show that exemption claimed applied "plainly and unmistakably"). The Supreme Court has

recently opined as to the proposition that exemptions to the FLSA are to be "narrowly construed"

10

against employers and "limited to those [cases] plainly and unmistakably within their terms and spirit." SmithKline Beecham, 132 S. Ct. at 2172 n. 21, citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). Specifically, the Court held that such narrow construction was not necessary where the court is called upon to interpret a "general definition that applies throughout the FLSA." Id.

Deciding whether an exemption applies requires the court to consider both questions of fact and law. The question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the FLSA's overtime provision is a question of law. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986); Clarke v. JPMorgan Chase Bank, N.A., 2010 WL 1379778 *15 (S.D.N.Y. 2010). An employees' exempt status depends less on his title, and more on the actual duties performed. Cooke v. General Dynamics Corp. 993 F. Supp. 56, 61 (D. Conn. 1997); 29 CFR § 541.2 (job title alone insufficient to establish the exempt status of employee).

III.   General Requirements for Administrative Exemption

29 U.S.C. §213(a)(1) of the FLSA exempts, in pertinent part, "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. 213(a)(1). The Department of Labor (the "DOL") has promulgated regulations defining the elements that an employer must prove to qualify individuals as exempt administrative employees. Those regulations "define and delimit" the statutory terms," In re Novartis Wage and Hour Litigation, 611 F.3d 141, 149 (2d Cir. 2010); 29 U.S.C.A. § 213(1). Where, as here, DOL regulations contain the agency's "reasonable interpretation of an ambiguous statute," the regulations are owed deference by the court. See Christensen v. Harris County, 529 U.S. 576, 586, (2000)

11

(Under FLSA, court "must give effect to [the Department of Labor's] regulation containing a

reasonable interpretation of an ambiguous statute"); Cohen v. Gerson Lehrman Group, Inc., 686

F. Supp.2d 317, 327 (S.D.N.Y. 2010) (noting that DOL "regulations are given controlling

weight"), citing, Reich v. John Alden Life Ins. Co., 126 F.3d 1, 8 (1st Cir.1997).

The regulation defining administrative employees sets forth three requirements for the

exemption to apply. Specifically, it must be found that:

- the employee earns at least $455 per week;

- the employee's "primary duty" is "the performance of office or non-manual work directly
related to the management or general business operations of the employer or the
employer's customers;" and,

- the employee's "primary duty includes the exercise of discretion and independent
judgment with respect to matters of significance."

29 C.F.R. § 541.200(a).

The parties agree that members of the Plaintiff class meet the salary level for the

administrative exemption.  They differ as to whether they meet the second and third elements.

Plaintiff's motion for partial summary judgment seeks a ruling that GEICO will be unable to

prove the second element, i.e., that the employee's "primary duty" is "the performance of office

or non-manual work directly related to the management or general business operations of the

employer or the employer's customers." 29 C.F.R. §541.200(a). GEICO argues that the duties of

the Plaintiff class meet both that element, as well as the third element set forth above. The court

turns first to consider Plaintiff's motion for partial summary judgment, i.e., whether the

"primary" duties of the positions of TCR I and TCR II are "the performance of office or non-

manual work directly related to the management or general business operations of the employer

12

or the employer's customers." 29 C.F.R. §541.200(a).

IV.     Plaintiff's Motion for Partial Summary Judgment

    A.    Office or Non-Manual Work Directly Related to
           Management or General Business Operations: General Principles

At the outset, the court notes that when considering whether an exemption applies, the court considers only the "primary" duties of the employee. To qualify for an exemption, the employee's primary duty must be the performance of work considered to be exempt. 29 C.F.R. §541.700(a). An employee's "primary" duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. §541.700(a). The question of whether an employee's time is spent performing primarily exempt work is a factual question. Theoretically, employees can spend their work day performing both exempt and non-exempt work. Generally, those employees who spend more than 50% of their time engaging in exempt work will be deemed exempt. 29 C.F.R. §541.700(b).

Regulations and case law have interpreted the requirement that an employees' primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." As to defining "administrative" work, the relevant DOL regulation states that employees are deemed to meet this requirement if their work is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. §541.201(a).

The distinction between "production" and "administrative" work is easy to draw in cases where employees are engaged in the manufacture of a tangible product on an assembly line, or as

13

salespeople in a retail establishment. Such duties are clearly not within the administrative exemption and employees carrying out these duties are entitled to overtime compensation. Where, as here, however, employees are not involved in the manufacturing or retail sales aspect of a business, the line between non-exempt "production" and exempt "administrative" functions is not easily drawn. Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 532 (2d Cir. 2009) (noting that line between administrative and production jobs in "not a clear one"). Indeed, courts have often struggled to decide whether an employee's duties fall on the "production" or "administrative" side of a business. See, e.g., Cohen v. Gerson Lehrman Group, Inc., 686 F. Supp.2d 317, 328-29 (S.D.N.Y. 2010) (noting that the classification of an employee's responsibilities requires a "fact-intensive analysis of employee functions").

DOL regulations are helpful in drawing the proper distinction between production and administrative duties. Administrative duties are described as "functional" areas of a business including tax, accounting and human resources services. See 29 C.F.R. 531.201(b). DOL regulations provide a non-exhaustive list of examples of exempt administrative activities. That list includes employees who work in other functional areas including: "finance, budgeting, auditing, insurance, quality control, purchasing, procurement, advertising, marketing, research, safety and health, personnel management, employee benefits, labor relations, public relations, computer network, internet and database administration, legal and regulatory compliance; and other "similar activities." 29 C.F.R. § 541.201(b) (noting that regulation "includes but is not limited to" the examples offered in the regulation). DOL regulations also note that employees who perform work "directly related to the management or general business operations of the employer's customers" may be exempt. This category of workers includes employees who act

14

"as advisers or consultants to their employer's clients or customers," including those acting as "tax experts or financial consultants." 29 C.F.R. §541.210(c).

In addition to promulgating general regulations, the DOL has promulgated regulations applicable to particular industries. Specifically, DOL has promulgated a regulation applying to "insurance claims adjusters." That regulation categorizes these employees as administrative, stating that they "generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company . . . ." 29 C.F.R. §541.203(a). The remainder of the claims adjuster regulation sets forth illustrative duties of claims adjusters. Those duties include those attendant to the claims investigation process, such as conducting interviews to gathering factual information from claimants and other witnesses. 29 C.F.R. §541.203(a).

DOL opinion letters, issued in response to particular industry inquiries, similarly place the duties of insurance claims adjusters on the administrative side of the equation. Thus, opinion letters issued by the DOL on November 19, 2002 and August 26, 2005 state that the duties of claims adjusters are generally properly characterized as administrative in nature.

Also instructive as to the administrative question is the opinion of the Second Circuit in Davis v. J.P. Morgan Chase & Co., 587 F.3d 529 (2d Cir. 2009). There, the court discussed the production/administrative dichotomy in the context of the duties of financial underwriters. Applying the general DOL general regulation as to administrative work, the court noted the distinction described above, between "those types of activities relating to the administrative operations of a business as distinguished from 'production' or . . . 'sales' work." Davis, 587 F.3d at 531. Deciding the particular matter at hand, the court was guided by the DOL regulation that

applies specifically to "employees in the financial services industry." Davis 587 F.3d at 533,

citing, 29 C.F.R. §541.203(b). The court also looked to DOL opinion letters that gave guidance

in particular cases. See Davis, 58 F.2d at 534. Ultimately, upon consideration of DOL

guidelines, the Davis court held the loan officers at issue to be non-exempt "production"

employees entitled to overtime compensation.

        While Davis reached a conclusion only as to the financial services employee before it,

general statements about the administrative exemption and DOL regulations are important to

note. For example, the Davis court rejected the notion that "production" work could refer only to

the manufacture or sale of tangible goods. Id. at 532. The court similarly rejected distinctions

defined by an employee's title, the monetary value of transactions related to the employees'

duties, or the physical space in which the employee worked. Id. at 532.

        Perhaps most important to note is that both Davis, and the relevant DOL regulations

emphasize the industry-specific nature of the production/administrative dichotomy question.

Thus, in Davis, the Second Circuit, emphasized that the "context of a job function matters." Id. at

537. See Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2170 (noting that courts

should consider employee duties in context of their particular industry). Similarly, the DOL

regulation as to "general business operations" is industry specific. Thus, that regulation

characterizes administrative employees as those who perform functions "directly related to the . .

. general business operations of the employer or the employer's customers." 29 C.F.R. §

541.200(a) (emphasis added). Notably, the regulation refers to the business of the employer,

rather than to an employer – indicating that the regulation is to be applied in a business specific

context. See also 29 C.F.R. § 541.201(a) (emphasis added) (noting that an administrative

16

employee performs work "directly related to assisting with the running or servicing of the
business . . ." and not "a" or "any" business).

   B.   Disposition of Plaintiff's Motion for Partial Summary Judgment

   Plaintiff's motion for partial summary judgment seeks a ruling that GEICO cannot prove,
as a matter of law, that the duties performed by the Plaintiff class fall on the administrative side
of GEICO's business.  Instead, Plaintiff argues that the duties of the TCR's can be properly
defined only as non-exempt "production" positions. Thus, Plaintiff argues that GEICO cannot
prove, as a matter of law, that the members of the collective action meet the second element of
the administrative exemption. The court disagrees.

   GEICO is engaged in the business of selling policies of insurance. As such, its general
business operations are properly characterized as the sale of insurance. Office work performed by
GEICO employees that is "directly related" to the management of its business, including work
that "services" the insurance business, is properly characterized as administrative, rather than
"production" work. The court therefore holds that the adjustment of claims is properly
characterized as an administrative function performed by adjusters servicing GEICO's general
business operations. Accord Cheatham v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006); see
also Jastremski v. Safeco Ins. Companies, 243 F. Supp.2d 743, 753 (N.D.Ohio 2003) .While, as
noted above, "claims adjustment" is not listed as an example in the DOL general regulation
defining administrative work, see 29 C.F.R. §541.201(b), that list is not exhaustive.  Importantly,
DOL has issued a particular regulation stating that claims adjusters are generally considered to be

administrative employees.  29 C.F.R. §541.203(a).[1]

Plaintiff seeks to avoid the conclusion reached by the court (and by the DOL) by seizing upon language in the Second Circuit's decision in <u>Davis</u> which characterized loans, in the context of the financial services industry, as "the goods," produced by the defendant bank. Plaintiffs argue that the "goods" produced by GEICO are insurance policies and payments thereon. Since TCR's "produce" insurance coverage, Plaintiff argues that their duties fall on the production side of the production/administration dichotomy. <u>Davis</u> was decided in the context of a completely different industry, and, in view of the instruction that "context matters," its specific holding is of limited application here. Additionally, Plaintiff's reliance on <u>Davis</u> requires, at the very least, a finding that GEICO is engaged in the claims adjustment business. That strained description of GEICO's business is foreclosed by the court's common sense holding that GEICO is engaged in the business of selling insurance policies, not the claims adjustment business. Servicing of policies by engaging in claims adjustment falls into the broad administrative category of "duties related to servicing the business" as described in DOL regulations. 29 C.F.R. § 541.201(a). <u>Accord</u> <u>In re Allstate Ins. Co. Fair Labor Standards Litigation</u>, 2007 WL 2274802 *8 (D. Ariz. 2007)(claims adjusters perform work that is administrative in nature); <u>cf.</u> <u>Bucklin v. American Zurich Ins. Co.</u>, 2013 WL 3147019 *6 (C.D. Cal. 2013) (holding claims examiners administrative employees who "service" defendant insurance company under state law provision analogous to FLSA administrative exemption). Indeed, even a finding that GEICO was, in fact, a company engaged exclusively in the claims adjustment business would not compel a different

---

[1]    Particular tasks set forth in the claims adjuster regulation, such as determining liability, must be evaluated to determine the third element of the administrative exemption, <u>i.e.</u>, whether adjusters exercise independent judgment and discretion.

18

conclusion.  See Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 872 (7th Cir. 2008) (holding

outside claims adjusters to be administrative employees engaged in service of the business of

employer's customers).

    Finally, the court rejects Plaintiff's argument that employees can be deemed

administrative only if they are involved in directing the policies or management direction of their

company. It has certainly been established, as a matter of fact, that TCR's are not involved in

decision-making as to the future management and path of GEICO.  Such high level corporate

involvement in GEICO's direction is not, however, necessary to a holding that TCR's are

administrative employees.  It is enough that such employees perform duties directly related to the

"management" or "general business operations" of GEICO or its customers.  See 29 C.F.R.

§541.200(a)(2). As described above, TCR duties fall squarely within the latter portion of this

category of duties.  Accord Withrow v. Sedgwick Claims Management Service, Inc., 841 F.

Supp.2d 972, 979 (S.D. W. Va. 2012) (claims examiners' need not be engaged in policy making

to be deemed administrative employees).

    Because the court finds, as a matter of law based upon the facts recited above, that the

duties of TCR's are those that service GEICO's business, and are in accord with those described

within the relevant regulation, the court holds that the primary duties of the members of the

collective class are "the performance of work directly related to the management or general

business operations" of GEICO. Moreover, these employees "perform work directly related to

assisting with the running or servicing" of GEICO's business.  29 C.F.R. §541.201(a).

Accordingly, the court concludes that TCR's meet the second element of the administrative

employee exemption. Therefore, Plaintiff's motion for partial summary judgment as to the

second element of the administrative exemption is denied, and GEICO's motion is granted as to this element. Having thus decided this element, the court turns to consider GEICO's motion for summary judgment. The only question remaining as to that motion is whether the third element of the administrative exemption is met, i.e., whether the "primary" duties of the TCR's "include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.202(a).

IV.     GEICO's Motion for Summary Judgment

      A.     Exercise of Discretion and Independent Judgment
           With Respect to Matters of Significance: General Principles

The DOL has issued regulations concerning the meaning of the "discretion and independent judgment" component of the administrative exemption. The general construction to be applied to this element states that the duties of an employee falling within the exemption involve comparing and evaluating different courses of conduct, and acting or making a decision after consideration of "various possibilities." 29 C.F.R. §541.202(a). The term "matters of significance" requires a consideration of "the level of importance or consequence of the work performed." 29 C.F.R. §541.202(a). The DOL instructs that this element of the administrative exemption must be evaluated in a fact specific way. 29 C.F.R. §541.202(b). Factors to consider include the employee's authority over company policy, whether he "carries out major assignments" in the operations of the business, and the level of the employee's authority with respect to committing the employer in matters of significant financial impact or binding the company on such matters. 29 C.F.R. §541.202(b).

Importantly, an employee whose duties fall within the exemption is not required to act

free from "immediate direction or supervision." 29 C.F.R. §541.202(c). Thus, the exempt

employee need not have "unlimited authority and a complete absence of review." 29

C.F.R.§541.202(c). The focus is on the exercise of discretion, not whether the employee's

discretionary decision is ultimately chosen by the employer. 29 C.F.R. §541.202(c). The DOL

recognizes that an employer's large volume of business may result in a situation where many

employees exercising discretion in the same way. 29 C.F.R. §541.202(d). Nonetheless, each

employee must do more than simply apply well-established techniques, be responsible for

secretarial duties or simply be " performing other mechanical, repetitive, recurrent or routine

work." 29 C.F.R. §541.202(d).

 The particular DOL regulation applying to insurance claims adjusters, which, as noted

states that such employees "generally meet the duties requirements for the administrative

exemption . . . ." 29 C.F.R. §541.202(a), also speaks to particular duties involving the exercise

of judgment and discretion. Thus, the claims adjuster regulation states that for adjusters to be

exempt they must be responsible for "reviewing factual information to prepare damage estimates;

evaluating and making recommendations regarding coverage of claims; determining liability and

total value of a claim; negotiating settlements; and making recommendations regarding

litigation." 29 C.F.R. §541.203(a). Notably, the operative terms to consider include whether the

individual claimed to be exempt "reviews," "evaluates," "determines," "negotiates," and

"recommends" when carrying out his duties.

 DOL comment letters have touched upon the issue of whether claims adjusters are

exempt. In a letter dated November 19, 2002, the DOL opined that the claims adjusters at issue

were exempt administrative employees. That letter noted that exempt adjusters use their

judgment as to the importance of particular facts, and the worth of a claim. They were noted to deal with policy-holders and third-party claimants to reach a resolution. Even claims adjusters with extremely limited authority – as little as $3,000 – were held to exercise the requisite discretion to qualify for the exemption.

The necessary level of discretion for claims adjusters to be considered exempt was also before the DOL in opinion letters dated January 7 and August 26 of 2005. In those letters, DOL again stressed the importance of considering the facts of each particular case. The January 7, 2005, letter found junior level claims adjusters did not exercise the required discretion and judgment to qualify for the administrative exemption. There, the duties of the employees were limited to collecting data and documentation over the telephone. They made neither recommendations nor determinations as to coverage or liability, and had no authority to negotiate or settle disputed claims. Instead, they were responsible only for collecting and recording facts for entry into company forms.

In the opinion letter dated August 26, 2005, the DOL contrasted the duties of employees with the title of "Claims Specialist I" with those of employees known as "Claims Specialist II" and "Senior Claims Specialist." Like the junior level claims adjuster discussed above, individuals with the title "Claims Specialists I" were held to lack the discretion and judgment necessary to be administrative employees, largely because of a high level of supervision. Virtually every decision made by this level of employee required supervisor approval. Employees holding the titles of "Claims Specialist II" and "Senior Claims Specialist," on the other hand, were held to be administrative employees. Unlike Claims Specialist I's, these exempt employees acted under less supervision, with supervisors only "spot-checking" their work.

Additionally, these employees used their own judgment as to coverage and liability. They handled more complex cases and interacted with a variety of outside sources and experts, often with respect to matters in active litigation.

What is clear from the foregoing authorities is that any holding as to the issue of whether an employee's primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance" is necessarily fact specific. The court turns now to consider the facts here to determine whether they compel a conclusion on summary judgment.

    B.      Disposition of GEICO's Motion for Summary Judgment

    1. Abrogation of Novartis

Before turning to the particular merits of the issues of judgment and discretion, the court discusses briefly the effect of the abrogation of Novartis, 611 F.3d 142 (2d Cir, 2010), a case cited in this court's 2010 decision denying GEICO's pre-class discovery motion for summary judgment. Novartis, which held that pharmaceutical sales representatives were neither exempt outside sales persons nor administrative employees, was abrogated by the holding of the Supreme Court in Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156 (2012). There, the Supreme Court held such employees to be exempt from the FLSA overtime requirement as outside sales representatives. See SmithKline Beecham Corp., 132 S. Ct. at 2173. Since it relied on the "outside salesman" exemption to the FLSA, the Court in SmithKline Beecham did not reach the issue dispositive to the Novartis ruling, i.e., whether the representatives were exempt administrative employees. SmithKline Beecham Corp., 132 S. Ct. at 2164 n.9. The Court's decision has been noted to render the Novartis decision regarding the administrative exemption to be "pure dictum." Pippins v. KPMG LLP, 921 F. Supp.2d 26, 51 (S.D.N.Y. 2012).

The court agrees that <u>Novartis</u> is abrogated and rendered dicta in the context of pharmaceutical sales representatives.  It therefore contains no binding legal conclusions as to such employees.  <u>Novartis</u>, however, remains good law in certain general aspects.  Importantly, the court continues to apply both the general regulations that speak to judgment and discretion cited in its prior opinion, as well as the particular claims adjustment regulations set forth above.  With those standards in mind, the court considers whether TCR's exercise the requisite judgment and discretion to fall within the third element of the administrative exemption.

    2.    <u>Discretion and Independent Judgment</u>

What was both unclear and the subject of "sharp disagreement" prior to discovery, has now become clear. At this point, after the completion of discovery, the court holds the evidence clear and beyond dispute that the duties performed by members of this collective action include the exercise of discretion and judgment necessary for the administrative exemption to apply. Not only do TCR duties fall within most of the descriptions set forth in the DOL's general regulation as to this element, they also fall squarely within the particular regulation describing claims adjusters who are deemed exempt.

As discussed in the factual review above, TCR's conduct individualized investigations for each claim presented. There is no factual question but that TCR's are, indeed, engaged in the duties of interviewing insureds, witnesses and physicians, and reviewing factual information to prepare damage estimates. <u>See</u> 29 C.F.R. §541.203(a). Guided by GEICO manuals, claims software and supervisors, TCR's consider each claim separately and make independent discretionary judgments along the way to the final claims adjustment. Within their individual limits of authority, TCR's make decisions and recommendations, including the amount that

GEICO will pay. While the recommendation of TCR's may not be the final decision that GEICO reaches in every coverage case, their recommendations and findings are often the final decision, and are integral to the claims adjustment procedure. Supervisory input does not defeat application of the administrative exemption. The applicable regulations are clear – individuals need not act completely without supervisor approval to be considered exempt administrative employees. 29 C.F.R. §541.202(c).

The court rejects Plaintiff's characterization of TCR's as being responsible for nothing more than the application of "well-established techniques," or the performance of "mechanical, repetitive, recurrent or routine work." 29 C.F.R. §541.202(d). The way in which TCR's follow GEICO procedures is not merely a matter of rote application leading to an inevitable result. Instead, such procedures are a guide, advising TCR's as to the general direction to take with respect to the adjustment of claims. Indeed, GEICO training materials note that TCR's are to pay attention to the facts of particular cases, asking appropriate follow up questions and skipping certain areas of inquiry. TCR's must use their judgment to determine the appropriate questions to ask in any particular case. GEICO manuals and procedures, including questions covered by the company's Claim IQ software, provide a general road map, not a path that prohibits deviation.

GEICO is a large auto insurer handling many claims arising out of car accidents. As a result of sheer volume, the way in which accidents occur may seem at times to be repetitive and routine. To be sure, as stated by GEICO the Claim IQ software is used to "establish uniformity in establishing damages for a claim, based upon the combined knowledge of a team of experts who have many years of experience in investigating liability claims at GEICO." The need for consistency in handling a great number of claims makes the use of uniform procedures desirable.

It would be neither in the interests of GEICO nor its policy holders to have claims adjusted according to the unguided whim of a particular claims adjuster. The existence of company-wide procedures to ensure a level of consistency in customer outcomes does not remove TCR's discretion and judgment from the claims adjustment procedure. As recognized by other courts, the existence of guides, including claims evaluation software, does not necessarily take the exercise of discretion out of the claims adjuster position. Accord In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litigation, 481 F.3d 1119, 1130 (9th Cir. 2007) (use of software does not "eliminate the need for discretion and judgment any more than does resort to other reference works or to the opinions of appraisers and other experts"); Cheatham v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006) (requirement that adjusters consult with manuals or guidelines does not preclude exercise of discretion and independent judgment); In re Allstate Ins. Co. Fair Labor Standards Litigation, 2007 WL 2274802 *12 (same).

The court also holds that the TCR's exercise of discretion and judgment is directed towards "matters of significance," as set forth in the relevant regulation. See 29 C.F.R. §541.202(b). While each claim adjusted may appear minuscule when compared with the size of GEICO's business, the overall value of claims adjusted is certainly significant, from a dollar perspective, when considered in the aggregate. Moreover, the monetary amount of individual claims adjusted does not take away from the significance of the matters handled by the TCR. The personal interaction with a TCR may be a policy holder's only interaction with GEICO. Certainly, the customer service provided by the TCR is a significant matter to the company's overall business reputation and, consequently, its financial health and potential for growth.

In sum, the court holds that there is no material fact as to whether or not members of this

26

collective action exercise discretion and judgment with respect to matters of significance necessary to satisfy the third and final prong of the administrative exemption.  They do. Thus, this court joins other courts that have considered substantially similar responsibilities, and holds that the TCR's are exempt administrative employees. Accordingly, GEICO's motion for summary judgment is granted.  Accord Robinson-Smith v. Government Employees Ins. Co., 590 F3d. 886, 897 (D.C. Cir. 2010) (GEICO auto damage adjusters performed a "a majority of the listed activities" to support finding that they exercised requisite discretion and independent judgment); Roe-Midgett v. CC Servs., Inc., 512 F.3d 865 (7th Cir. 2008) (automobile insurance claims adjusters held to be exempt administrative employees); In re Farmers, 481 F.3d at 1129.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is denied. Defendant's motion for summary judgment is granted. The court need not consider the motion addressed to de-certification of the Plaintiff collective class. The Clerk of the Court is directed to terminate the motions docketed under docket entries number 162, 163 and 164 and to thereafter close the file in this case.

SO ORDERED

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
November    , 2013

27